LOWE *v.* RADECKE.

1. LANDLORD AND TENANT—CONTRACTS—BREACH—NOXIOUS WEEDS
   —AGREEMENT TO CUT—STATUTES.

   Where a lease of a farm contained a provision that the
   lessee "agrees to cut and keep down all noxious weeds and
   thistles," but fixed no time for the performance of the
   same, section 4603, 1 Comp. Laws 1915, providing that
   thistles and noxious weeds should be cut "at least twice
   in each year, once before the first day of July and again
   before the first day of September," became a part of the
   contract, and the court below, on appeal from summary
   proceedings before the circuit court commissioner to oust
   defendant for noncompliance with the terms of the lease,
   was in error in allowing the jury to fix another and dif-
   ferent time than that prescribed in the statute as the
   reasonable time for the performance of the act. · BIRD,
   C. J., dissenting.

2. SAME—SUBLETTING—QUESTION FOR JURY.

   It was a question for the jury whether the provision in the
   lease against subletting without the consent of the lessor
   was violated by lessee's absence and the work being done
   by his father, where there was testimony that after the
   lease was signed the lessor was informed that the father
   would do the work in the lessee's absence, and he con-
   sented to the arrangement.

Error to Muskegon; Cross, J., presiding. Submitted
October 11, 1918. (Docket No. 49.) Decided April
3, 1919.

Summary proceedings by Jesse G. Lowe against Ed.
A. Radecke for the possession of leased premises.
There was judgment for defendant before the com-
missioner, and plaintiff appealed to the circuit court.
Judgment for defendant. Plaintiff brings error. Re-
versed.

*Cross, Foote & Sessions,* for appellant.
*Willard J. Turner,* for appellee.

See note in 43 L. R. A. (N. S.) 1090.

BIRD, C. J.  Plaintiff leased his farm of 160 acres in Muskegon county on the 2d day of November, 1916, to defendant for a term of three years with two additional years at the option of defendant.  The leasing was on shares.  The lease was in writing and was in the usual form of such leases.  The only provisions which it will be necessary to quote are the following:

"(*a*)  The said party of the second part agrees to cut and keep down all noxious weeds and thistles.

"(*b*)  And that he will farm the said land and premises in a good husbandlike manner and for the best interests of the parties hereto.

"(*c*)  And the said party of the second part agrees that he will not sublet the said premises, or any portion thereof, nor assign, nor transfer this lease to any person whomsoever without the written consent of the said party of the first part, his heirs, executors, administrators or assigns, endorsed on this lease.

"(*d*)  And should the said party of the second part fail in any of the foregoing promises, conditions and obligations contained in this indenture, on his part to be faithfully kept and performed, then this lease shall become null and void, and the said party of the first part, his heirs, executors, administrators or assigns may peaceably re-enter and take possession of the premises and property hereby rented without any formal proceedings either at law or in equity."

Defendant took possession of the farm and remained thereon until October, 1917, when plaintiff instituted summary proceedings before a circuit court commissioner to oust defendant on the theory that he had failed to comply with the terms of the lease.  The matter was heard by a jury and resulted in a verdict for defendant, with a like result on appeal in the circuit court.  Plaintiff assigns error on the proceedings in the trial court, as follows:

(1)  In refusing to receive in evidence section 4603 of the Compiled Laws of 1915.

(2) In refusing to grant the motion of counsel for the plaintiff that the court instruct the jury to render a verdict for plaintiff on the ground that under the undisputed evidence in the case the defendant had been guilty of such a violation of the terms of his lease as warranted the plaintiff in declaring the lease forfeited and that the forfeiture had occurred, and that plaintiff is entitled to possession.

(3) In submitting to the jury the question as to whether defendant had substantially performed his part of the lease, the evidence being overwhelming, undisputed and conclusive that he had not.

(4) In refusing to grant plaintiff's motion for a new trial.

1. It was the contention of plaintiff that defendant had failed to cut the Canada thistles growing on the farm in accordance with the terms of the lease. It will be noted that the provision of the lease requiring noxious weeds and thistles to be cut does not state *when* they shall be cut. For the purpose of fixing the time when defendant should have cut them, counsel for plaintiff offered the statute referred to, which requires noxious weeds to be cut on or before the first of July and again on or before the first of September. The court refused to receive the statute in evidence, but upon this phase of the case charged the jury that:

"The lease requires the noxious weeds to be cut by the defendant. Under this provision the defendant would be required to reasonably cut the noxious weeds and Canada thistles before they went to seed and so they would not injure the crops and farm. It would not require the defendant to cut every noxious weed and Canada thistle but would require the defendant to substantially cut all the noxious weeds and Canada thistles as a reasonably prudent farmer would do, and not allow them to go to seed and allow them to injure the crops and the farm."

This, we think, satisfied the plaintiff's contention as to the time when the weeds should be cut. But if it did not, it was the right of counsel to state to the

jury what he understood the law to be on that question (*Fosdick* v. *Van Arsdale*, 74 Mich. 302; *Prentis* v. *Bates*, 93 Mich. 234 [17 L. R. A. 494]; *Edwards* v. *Common Council of Three Rivers*, 96 Mich. 625; *People* v. *Smith*, 177 Mich. 358) and make what he could out of it, by way of argument, even though the statute was not in evidence, or he could have argued to them, as the court subsequently stated, that it could be implied from the lease that the weeds were to be cut before they went to seed and before they became injurious to the crops and the farm. We see no occasion to reverse the case on this ground.

2. Plaintiff contends that he should have had a directed verdict because the uncontradicted evidence showed that defendant had breached the lease in several particulars. Chief among these was the claim that the contract was personal and that defendant could not assign or sublet the farm to his father. We think there is no testimony that he did assign or sublet it to the father. The proofs do show that the father carried on the work on the farm while defendant was working at industrial plants in Grand Rapids and elsewhere. It is shown by the testimony of both, father and son, that after the lease was executed plaintiff inquired of defendant, who was unmarried, who was going to keep house for him and he replied that his father and mother were going to move onto the farm with him. The father testified that he advised plaintiff that he was going to work with his son. The son testified that the father advised plaintiff in that conversation that he was going to do the work in his absence, and that plaintiff stated "that would be agreeable to him." With reference to this contention the court charged the jury that:

"If you find, by a preponderance of the evidence, that after this lease was signed that it was agreed between the parties that the father of the defendant

should do the work on the farm, then it would not be necessary for the defendant to personally superintend the work on the farm, but in that case, it would be the duty of the father to substantially perform the work in a good farmerlike manner, and if he failed so to do in the particulars specified, then the defendant's rights under the lease would be forfeited. The burden of proving that the written lease was changed after it was signed is upon the defendant."

If the jury believed the conversation took place, which they evidently did, then plaintiff had no right to complain because defendant did not give his personal attention to the work on the farm.

It was further contended that the uncontradicted testimony showed that the Canada thistles had not been cut in accordance with the terms of the lease. It will suffice to say that the testimony on this question was in conflict and, therefore, it was proper to submit the question to the jury. We think the question as to whether the lease was violated in these particulars, as well as in other particulars, which were pointed out on the trial, were purely questions of fact and that the court was in no error in submitting them to the jury. The conflict in the testimony was such that we cannot say that the weight of the evidence is so overwhelmingly in plaintiff's favor that the verdict should be disturbed.

The judgment of the lower court should be affirmed.

FELLOWS, J. The lease between the parties contains the following provision:

"The said party of the second part agrees to cut and keep down all noxious weeds and thistles."

Section 4603, 1 Comp. Laws 1915, provides so far as important here as follows:

"It shall be the duty of every owner, possessor or occupier of land or of every person or persons, firm or corporation having charge of any lands in this

State to cut or cause to be cut down and destroyed all Canada thistles, milkweed (*asclepias cornutus*), wild carrots, oxeye daisies, or other noxious weeds growing thereon, or on any highway passing by or through such land, at least twice in each year, once before the first day of July and again before the first day of September." * * *

A penalty is provided for nonobservance of this provision. I am impressed that when these parties contracted upon the subject of noxious weeds and their destruction they contracted in contemplation of this act, and that the law of the land as found in this statute became and was a part of the contract. In other words, that when defendant contracted to cut the noxious weeds and thistles he contracted to cut them when the law required them to be cut. If there was no statute on the subject no doubt the instruction of the trial judge would have been correct upon the theory that no time having been fixed by the contract for the cutting of the noxious weeds, a reasonable time would be implied. But where the legislature has fixed the time for cutting noxious weeds I do not think a jury should be permitted to fix another and different time as the reasonable time for the performance of that act. Nor am I persuaded that plaintiff's counsel would have been justified in arguing to the jury that the statutory time for cutting weeds should prevail when the court had denied the applicability of the statute and refused to consider it.

Otherwise I agree with Chief Justice BIRD. I think for this erroneous view of the trial judge as to the applicability of the statute the case should be reversed.

Plaintiff will recover costs of this court. A new trial will be granted.

OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred with FELLOWS, J.