[No. 18897. Department One. May 13, 1925.]

WILLIAM HEATON, SR., *Respondent*, v. WILLIAM H. SMITH *et al., Appellants*.[1]

TRIAL (63)—DIRECTION OF VERDICT—POWER OF COURT. The court may direct a verdict only where there was no sufficient evidence to carry the case to the jury.

CONTRACTS (71)—CONSTRUCTION BY PARTIES. Where the parties have given their own interpretation of the words of a contract, it should be controlling.

LANDLORD AND TENANT (15)—LEASE—CONSTRUCTION—CONDITIONS—DESTRUCTION OF NOXIOUS WEEDS. A provision in a lease that a tenant shall cut and burn "all noxious weeds" before they go to seed, and do all work in a first-class farmerlike manner, only requires that the place be operated in good and farmer-like manner.

SAME (15). Rem. Comp. Stat., § 2762, providing that every lessee of land shall cut all noxious weeds thereon before a certain date, does not add to a clause in the lease requiring the lessee to cut them before they go to seed.

[1]Reported in 235 Pac. 958.

EVIDENCE (179)—PAROL EVIDENCE TO VARY WRITING—CONSTRUCTION
OF AGREEMENT—INTENT OF PARTIES. Evidence of a landlord's state-
ment that he was satisfied with the tenant's performance of a lease
is not inadmissible as varying the terms of the written lease, where
it went no further than to show his interpretation of doubtful por-
tions of the instrument.

Appeal from a judgment of the superior court for
Spokane county, Lindsley, J., entered February 25,
1924, in favor of the plaintiffs, notwithstanding the
verdict of a jury rendered in favor of the defendants,
in a landlord's action to recover possession of leased
premises. Reversed.

*W. D. Scott* and *R. L. Campbell,* for appellants.
*Randall & Danskin,* for respondent.

BRIDGES, J.—In January, 1922, the plaintiff leased
to the defendants for the period of five years a certain
tract of farm land, located in eastern Washington.
Those portions of the lease with which we are particu-
larly interested in this case are:

"All work necessary to carry out the terms of this
lease shall be done in first-class farmerlike manner and
in proper season therefor at the expense of the tenant.
. . . The tenant shall pull or cut and burn all
thistles, mustard, wild parsnip and other noxious weeds
before going to seed and shall clean and keep clean of
brush and weeds all fence rows, corners and waste
places in the tilled ground."

After the lessees had been on the land for a little
less than two years, and in September, 1923, the plain-
tiff gave them notice to quit and surrender possession
of the premises. The notice to vacate was given be-
cause the plaintiff claimed that the defendants had
violated the terms of the lease in a number of respects.
Defendants refused to vacate. Plaintiff brought suit
for possession. The case was tried to a jury, which
returned a verdict in favor of the defendants. A new

trial having been granted by the court, a second jury also returned a verdict in favor of the defendants. Thereafter the court granted plaintiff's motion for judgment notwithstanding the verdict. It is from this judgment that the defendants have appealed.

The appellants plead and offered testimony tending to show that, after the execution of the lease and after they had been on the land for some time and after some complaints made by the respondent concerning their manner of farming, particularly with reference to the weeds, they offered to surrender the possession of the land and terminate the lease; claiming that they could not farm it in the manner respondent was demanding, and that thereupon the respondent said to them:

"No, I don't want you to do that. You have got the place rented for five years and I want you to stay here and farm the place and as long as you farm the place and leave the place in as good condition as it is, you will never hear me say a word. . . . Go right ahead. . . . I want you people to stay here and clean the place up and do the best you can and I will be perfectly satisfied."

It ought to be, and it seems to be, conceded that the verdict of the jury was conclusive against the respondent on all questions involved, unless it be with reference to the noxious weeds. The respondent contends —and apparently this was the view the trial court finally took—that the provision in the lease with reference to weeds must be construed as requiring the appellants to pull or cut and burn all thistles and other noxious weeds before they went to seed; and that, since the appellants at all times admitted that they had not cut and destroyed all of the weeds and only contended that they had used a reasonable endeavor, under all the circumstances, to cut and destroy them, it necessarily follows that the terms of the lease have been

violated.  On the other hand, the appellants contend that, reading all of the provisions of the lease, it means that they were required to farm the land in a good and farmerlike manner and use all reasonable endeavors, under the circumstances, to keep the place free of weeds.

It seems to us that the case must be reversed whether we give the lease the construction contended for by the appellants or that demanded by the respondent. If we adopt the appellants' construction, then there was testimony to go to the jury as to whether they had used a reasonable effort to keep down the weeds; and since the jury found for them, it would be error for the court to grant a judgment notwithstanding the verdict, because that could be done only where there was not sufficient testimony to carry the case to the jury.

If, in the absence of other controlling facts, we should consider that respondent's construction of the lease is correct, that is, that all the weeds must be cut and destroyed, then we are met with appellants' testimony to the effect that the respondent agreed with them that they should go ahead farming as they had previously done and leave the place in as good condition as it was when they took it.  If this testimony is to be believed, then the parties themselves have given their own interpretation of the meaning of the weed clause in the lease.  That clause is not so unambiguous and clear as to forbid the parties making their own oral construction of its meaning.  The trial court, in substance, told the jury that, if they found that the parties themselves had given the weed clause of the lease the construction contended for by the appellant, then the question would be whether they had used a reasonable endeavor under all the circumstances to keep the weeds down.  Since the jury found for the

appellants on this question, we would be required to hold that they had complied with the weed terms according to the meaning given it by the parties themselves. So that, whatever construction we may give this lease provision, the result, it seems, would be the same; that is, to hold that the court erred in granting judgment notwithstanding the verdict.

But since we must return this case to the trial court with directions to set aside the present judgment and pass upon the respondent's motion for a new trial, it is proper that we should give the trial court the benefit of our construction of the weed clause in the lease.

While it is true that it says that "all weeds" shall be cut and burned before they go to seed, yet the lease also says that "all work necessary to carry out the terms of this lease shall be done in first-class farmerlike manner. . . ." It must be conceded, we think, that, on a farm the size of this, it would be impracticable if not impossible to cut and burn *all* noxious weeds. The lease ought to be given a reasonable construction—one which can be lived up to—and we think that, when all its terms are considered, it is reasonably plain that the intention was that appellants should operate the place in a good and farmerlike manner, not only as to plowing, seeding and harvesting, but also as to weeds. This is the construction which the supreme court of Wisconsin gave of a similar lease in the case of *Kossel v. Potratz,* 160 Wis. 450, 152 N. W. 189. The lease there provided that the tenant should "destroy all noxious weeds on the leased premises each year during the lease, also to destroy same on highways, lanes and alleys adjoining said premises." There was testimony tending to show that the tenant had employed the means customarily used in that vicinity to destroy the weeds. On appeal the following instruction of the trial court was sustained:

" 'It was the duty of defendant [tenant] to adopt all reasonable means and to do all things reasonably adapted to destroy such weeds and which were consistent with good husbandry. In determining what was reasonable for such purpose you have the right to consider the methods usually and customarily employed by farmers generally in that vicinity.' "

The court, speaking of the weed clause of the lease, said:

"It is without dispute that the premises when surrendered by defendant, were not free from such weeds. The court interpreted the lease to mean that defendant did not undertake to exterminate all noxious weeds on the premises, but that he obligated himself 'to adopt all reasonable means and to do all things reasonably adapted to destroy such weeds and which were consistent with good husbandry.' We are satisfied that the court properly construed the covenant concerning defendant's obligation to destroy all noxious weeds on the premises and committed no error in its rulings on evidence and in instructing the jury. It is clear from the surrounding facts and circumstances of the subject covered by this covenant of the lease that the parties did not intend defendant should be required to absolutely exterminate all noxious weeds on the premises and that they contemplated that defendant should employ such means and methods as good husbandry in the vicinity required."

In the case of *Wheeler v. Schilder*, 183 Iowa 623, 167 N. W. 534, the supreme court of Iowa gave a like construction to a somewhat similar lease.

Respondent calls our attention to § 2762, Rem. Comp. Stat. [P. C. § 124], which provides that every owner, lessee, etc., of land shall "cut down or otherwise destroy all noxious weeds growing thereon," and contends that it must be read into the lease.

This statute is a part of our criminal laws, and another section of it makes it a misdemeanor to fail to comply with its provisions. If respondent's conten-

tion be sustained, the result will not be changed. Parties executing a lease have a right to agree under what facts .and circumstances and for what defaults it may be terminated. The question before us is not what were appellants' duties under a criminal statute, but whether they have failed to live up to the terms of the agreement they made. We are not necessarily out of harmony with the case of *Lowe v. Radecke,* 204 Mich. 646, 171 N. W. 408, cited by respondent. It concerned a lease and statute similar to those involved here. The question was, when should the weeds be cut. The lease was silent on that matter but the statute fixed a definite date. The court read into the lease the statutory provision with reference to time.

Since there was ample testimony to carry the case to the jury on the question whether appellants had complied with the terms of the lease as we have construed them, it was error, in our opinion, for the trial court to grant the respondent a judgment notwithstanding the verdict.

We should probably dispose of another question lest it arise upon a new trial.

It is contended that the appellants' testimony to the effect that the respondent had told them that they should stay on the place and continue as they had and keep the place up as well as they could and he would be satisfied, was inadmissible as an attempt to alter the terms of a written lease by oral testimony. We think, however, that such testimony did not tend to alter the written lease and went no farther than to show the interpretation which the parties themselves had put upon certain doubtful portions of that instrument, and we think for this purpose the testimony in question was admissible. However, in the light of the interpretation we have given the weed clause of this

lease, it is probable that this testimony is not of very great importance.

The judgment is reversed and the cause remanded with directions to set aside the judgment already entered and passed upon the respondent's motion for a new trial.

TOLMAN, C. J., MAIN, ASKREN, and PARKER, JJ., concur.